HARDY H. HARRIS v. FRANK L. BLUM CONSTRUCTION COMPANY
AND HARTFORD ACCIDENT & INDEMNITY COMPANY

No. 7121IC9

(Filed 24 February 1971)

1. **Master and Servant §§ 93, 96— workmen's compensation — Industrial
Commission — conflicts in evidence — findings of fact**

Conflicts in the evidence in a workmen's compensation proceeding
are to be resolved by the Industrial Commission, and the findings of
fact by the Commission (except jurisdictional facts) are conclusive
upon appeal when supported by competent evidence.

2. **Master and Servant § 67— workmen's compensation — cause of stroke
suffered at work — finding by Industrial Commission**

Finding by the Industrial Commission that a stroke suffered by
plaintiff while at work was not caused by an injury arising out of
and in the course of his employment, *held* supported by competent
medical evidence.

3. **Master and Servant § 85— workmen's compensation — rehearing for
newly discovered evidence — power of Industrial Commission**

The Industrial Commission has the power to grant a rehearing
of a proceeding before it on the ground of newly discovered evidence.

4. **Master and Servant § 85— workmen's compensation — authority of
Industrial Commission to hear further evidence**

Upon appeal to the Industrial Commission from an opinion and
award of the hearing commissioner, the Commission has discretionary
authority to receive further evidence regardless of whether such
evidence is newly discovered. G.S. 97-85.

5. **Master and Servant § 93— workmen's compensation — denial of motion
to remand for further medical evidence**

In this workmen's compensation proceeding, the Industrial Com-
mission did not abuse its discretion and did not commit error in deny-
ing plaintiff's motion to remand the cause to the hearing commissioner
for the purpose of taking the testimony of a medical doctor.

6. **Master and Servant § 96— workmen's compensation — new trial for
newly discovered evidence — motion in Court of Appeals**

A motion for a new trial on the ground of newly discovered evi-
dence in a workmen's compensation case may be granted in the Court
of Appeals under proper circumstances.

7. **Master and Servant § 96— workmen's compensation — new hearing for
newly discovered evidence — denial by Court of Appeals**

Motion by appellant in a workmen's compensation proceeding for
a new hearing on the ground of newly discovered evidence is denied
by the Court of Appeals where the evidence constituting the basis

for the motion was in possession of plaintiff before the hearing in the Industrial Commission.

APPEAL by plaintiff employee from an opinion and award by the North Carolina Industrial Commission filed 20 may 1970.

Plaintiff's evidence tended to show that on 14 July 1969 he had been employed by Frank L. Blum Construction Company (employer) for over five years. He was not suffering from hypertension or any heart disease. He testified that he was working on 14 July 1969, and after mixing some cement in a wheelbarrow, he started to pick it up "to push it back over where we were going to use it, and my foot slipped and I fell across the bed of the wheelbarrow. My neck struck that. The back bed of the wheelbarrow was made of steel. My right foot slipped. The ground was wet at the time. * * * This happened between 7:00 and 8:00 o'clock. * * * I had just gone to work and done my first work in the morning. The fall and striking the back of my neck as I referred to did not render me unconscious. It dazed me though. I mean it kinda dazed me. After the fall, I reached up and caught the wheelbarrow with my right hand and pulled myself off the ground. And I saw I couldn't stand up in my left leg, so I sat on a homemade ladder back there. I sat down on it."

Plaintiff was in the hospital from 14 July 1969 to 6 August 1969. He also testified: "My left arm and left leg have been unusuable (sic) since the fall I have described. I can't do anything but just sit around the house at home. I can't use my left arm at all."

Ernest Howard Morgan (Morgan) testified for plaintiff that he was a foreman for employer on 14 July 1969 and that he told plaintiff to mix the cement and later missed him. Morgan testified:

"So I went around to look for him. And the next time I saw him, he was sitting on that ladder and he couldn't move his left side at all. And I asked him what was wrong and he said he had slipped and fell. So I looked and he did have a print of cement on his neck in the area where he had hit, which was somewhere on the back and to the right of his neck. And he couldn't move anything, so I let him sit there a few minutes and decided I had better take him to the hospital."

Henry Means (Means) testified for plaintiff that on 14 July 1969 he was employed by employer and that he saw plaintiff when Morgan sent him to mix cement. Means testified:

"I saw him the next time when Mr. Morgan asked me to come and help pick him up. He had fell. He carried him to the hospital.

I did observe the back of Mr. Harris' neck and I seen where he had cement on the back of his neck, around on the back of the neck. Pertaining to the ground there at the wheelbarrow, I saw a small amount of the cement had been knocked out of the wheelbarrow. * * *

I heard Mr. Harris say that he had slipped and fell."

Dr. William Franklin Folds (Dr. Folds) was stipulated to be a medical expert and testified for plaintiff that the first time he saw plaintiff was on 16 July 1969 in the Forsyth Memorial Hospital. His examination revealed "a left hemipareses (sic), or hemiplegis (sic), or left paralysis of the body involving the left upper and left lower extremities."

Dr. Folds treated plaintiff until his discharge from the hospital on 6 August 1969 and had "followed him since his discharge at monthly intervals." Dr. Folds further testified:

"From my examination, I was able to determine that the cause of the left hemipareses (sic) was a cerebral vascular accident, and, of course, there is always a question as to the cause of it.

I received a history of the accident from the patient. * * *

My diagnosis was gained by examination and it was obvious that he had a cerebral vascular accident. As I stated, there is some question as to the cause of this. * * *

* * *

* * * He had, when he was admitted, a complete flaccid. This is a limb paralysis. I mean he had no use whatever of his left upper and left lower extremities.

As I did not see Mr. Harris prior to his bout in the hospital, I am having to assume some things. I can only say that, by history, he had no blood pressure problem or no cardiac problem, and then he had none until the day the accident happened. And he certainly, by the history, sustained a

broken side of the neck and apparently shortly thereafter lost the use of his left side of his body. My opinion is that there is a strong possibility that the accident could have had something to do with it. I don't think I could state, without reservation, that it caused it because this is just out of my ability to do this.

In my opinion, which is satisfactory to myself, Mr. Harris is presently unable to carry on any gainful employment. The report you hand me is the report I filled out for Mr. Hardy Harris on December 30th, 1969, and it does bear my signature thereon."

Dr. Ernesto de la Torre, who was stipulated and found to be a medical expert specializing in the field of neurosurgery, testified for defendant:

"I was asked to see Mr. Harris in consultation at Forsyth Hospital on July 15, 1969, and I saw him there at the hospital. At the time, I obtained the history that he had fallen while pushing a wheel barrow the day before, hit his right side of the neck and then he couldn't walk immediately after that. And he couldn't do anything nor use his hand in the left side. So I did a neurological examination on him which confirmed that he did have weakness on the left extremities and he could not see to the left side. And I thought that he had a stroke; that he had had a stroke, which is sometimes referred to as a cerebral vascular accident.

Based on my examination of him, I formed an opinion as to the cause of the cerebral vascular accident, with reasonable medical certainty. I thought he had a thrombosis of the carotid artery or the middle cerebral artery on the right side from arteriosclerosis or hardening of the arteries. I found some degree of hardening of the arteries as a condition with Mr. Harris. I didn't do a lot of other tests on him to prove the hardening of the arteries because at 56, we assume that some hardening of the arteries exist (sic) anyway.

I did not find any evidence of trauma to the neck in my examination."

On cross-examination Dr. de la Torre testified that "[a] trauma or blow on the head could not have caused the cerebral vascular accident."

The parties stipulated that they were subject to the provisions of the North Carolina Workmen's Compenstaion Act (Act), that the relationship of employer-employee existed on the date of the alleged accident, the amount of weekly wages paid to plaintiff, and that the Hartford Accident and Insurance Company was employer's insurance carrier.

The deputy commissioner found, among other things, that:

"7. Plaintiff had a stroke on July 14, 1969, while in the employment of the defendant employer, however, such stroke was caused by the hardening of his arteries which produced a rupture of a blood vessel in the brain forming a clot and was not caused by an injury arising out of and in the course of his employment."

The deputy commissioner concluded that the plaintiff was not entitled to recover and denied his claim for benefits under the Act in an undated opinion filed 17 March 1970.

The plaintiff appealed to the North Carolina Industrial Commission (Commission) asserting in his Application for Review, which was filed 20 April 1970, that the deputy commissioner committed error for that the "evidence was not sufficient to support findings of fact and conclusion of law."

After making a typographical correction and punctuation changes in paragraph five of the findings of the deputy commissioner, the Commission adopted his opinion as its own, including his findings of fact and conclusions, and affirmed the results reached by him.

From the denial of his claim for benefits under the Act, the plaintiff appealed to the Court of Appeals.

*Robert M. Bryant for plaintiff appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson by William F. Maready and John M. Harrington for defendant appellees.*

MALLARD, Chief Judge.

[1, 2] Plaintiff contends that the facts contained in paragraph number 7 of the findings of fact of the deputy commissioner and adopted by the Commission are not supported by competent medical testimony. This contention is without merit. The findings are supported by the competent testimony of Dr. de la Torre.

It is established law in North Carolina that conflicts in the evidence are to be resolved by the Commission and that findings of fact by the Commission (except jurisdictional facts) are conclusive upon appeal when supported by competent evidence. *Anderson v. Construction Co.*, 265 N.C. 431, 144 S.E. 2d 272 (1965) ; *West v. Stevens*, 6 N.C. App. 152, 169 S.E. 2d 517 (1969) ; *Morgan v. Furniture Industries, Inc.*, 2 N.C. App. 126, 162 S.E. 2d 619 (1968). No jurisdictional facts are at issue herein. The facts found in this case are based on competent evidence and support the conclusions of law and the decision of the Commission. The Court of Appeals is bound thereby. *Bailey v. Dept. of Mental Health*, 272 N.C. 680, 159 S.E. 2d 28 (1968) ; *Martin v. Georgia-Pacific Corp.*, 5 N.C. App. 37, 167 S.E. 2d 790 (1969).

Defendants' second assignment of error is that the Commission committed error in denying plaintiff's motion that the cause be reset for hearing for the purpose of taking the testimony of Dr. E. O. Jeffreys.

At the conclusion of the evidence taken before the deputy commissioner, the plaintiff announced that the only other evidence he would offer would be "Dr. Jeffries"; whereupon the following colloquy occurred:

"THE COURT: Are you going to get a report from Dr. Jefferies?

MR. BRYANT: Yes, Your Honor.

THE COURT: Well, then maybe you and Mr. Maready can get together and submit it.

MR. BRYANT: I think so.

MR. MAREADY: That's quite possible, depending on what he says, of course.

THE COURT: All right.

WHEREUPON THIS HEARING WAS CONCLUDED."

In the "opinion and award" by Deputy Commissioner Delbridge, which was filed 17 March 1970, it was stated that the case was heard on 13 January 1970. There is nothing in the record to indicate whether the report of Dr. Jeffreys (or "Jefferies") was offered between the hearing date and the

filing date. The next reference in the record to the testimony of Dr. Jeffreys is contained in a motion by the plaintiff to the Commission dated 8 May 1970 asking that the cause be remanded to the "Commissioner" for the purpose of taking the testimony of Dr. Jeffreys. In this motion plaintiff asserts that he had informed the deputy commissioner at the hearing on 13 January 1970 that Dr. Jeffreys had taken X-rays of the plaintiff but would not be able to furnish a report until some time later; that he had requested the commissioner to hold the case in abeyance until Dr. Jeffreys' findings could be taken as evidence; and that he had received a letter addressed to the Commission from Dr. Jeffreys which he attached to the motion. The letter of Dr. Jeffreys is dated 30 April 1970 and reads as follows:

"N. C. Industrial Commission
Education Building
Raleigh, N. C.

                              Re: Mr. Hardy Harris
Gentlemen:

    I have examined the above patient, and X-rays were made April 24, 1970.

    It is my opinion that this patient's illness is due to the injury which occurred while he was at work.

                              Sincerely yours,
                              s/EVERETT O. JEFFREYS
                                Everett O. Jeffreys, M.D."

[3-5] In his brief plaintiff correctly asserts that the Commission had the power to grant a rehearing of a proceeding before it and in which it has made an award on the grounds of newly discovered evidence. In support of this assertion, he cites *Hall v. Chevrolet Co.*, 263 N.C. 569, 139 S.E. 2d 857 (1965), and *Butts v. Montague Bros.*, 208 N.C. 186, 179 S.E. 799 (1935). There is no contention or assertion in plaintiff's *motion* that the evidence of Dr. Jeffreys was "newly discovered." In fact, plaintiff apparently had been examined by Dr. Jeffreys before the 13 January hearing. However, Dr. Jeffreys' letter, upon which plaintiff bases his motion, appears to be based on an examination of the plaintiff that he made more than a month after the deputy commissioner had

denied recovery. The Commission, upon an appeal to it from an opinion and award of the hearing commissioner, had the discretionary authority to receive further evidence regardless of whether it was newly discovered evidence. G.S. 97-85. We hold that the Commission did not abuse its discretion and did not commit error in denying plaintiff's motion to remand to the hearing commissioner for the purpose of taking the testimony of Dr. Jeffreys.

[6] The record on appeal in this case was docketed in this court on 18 August 1970 and came up for oral argument on 26 January 1971. On 13 January 1971 plaintiff filed a motion requesting that the Court of Appeals grant him a new hearing upon the grounds of newly discovered evidence. This motion is supported by an affidavit dated 23 December 1970 of Dr. Jeffreys in substance stating that in his opinion the left hemiparesis suffered by the plaintiff on 14 July 1969 was caused by a trauma or blow to the back of the head. A motion for a new trial on the grounds of newly discovered evidence in a Workmen's Compensation case may be granted in the Court of Appeals under proper circumstances. *Shelton v. Dry Cleaners*, 2 N.C. App. 528, 163 S.E. 2d 288 (1968).

In 2 McIntosh, N. C. Practice 2d, § 1800(7), p. 242, it is said:

"A motion may be made in the appellate court for a new trial for newly discovered evidence when such evidence has been discovered after the adjournment of the court below and pending the appeal. Such motions are not favored, and the court may grant or refuse the motion in its discretion, and without discussion or a written opinion as a precedent. * * * The same requirements as to the nature of the evidence and the exercise of proper diligence would apply, as upon a similar motion in the lower court, and the facts should be presented by affidavits and counter affidavits."

The prerequisites to the granting of such a motion in the appellate court are set forth in *Brown v. Hillsboro*, 185 N.C. 368, 117 S.E. 41 (1923). See also *McCulloh v. Catawba College*, 266 N.C. 513, 146 S.E. 2d 467 (1966); *State v. Casey*, 201 N.C. 620, 161 S.E. 81 (1931); and 2 McIntosh, N. C. Practice 2d, § 1596(8), p. 100.

In the case of *Ryan v. United States Lines Company*, 303 F. 2d 430 (2d Cir. 1962), it was held that under Rule 60(b) of the Federal Rules of Civil Procedure, the results of a new physical examination of an injured seaman was not "newly discovered evidence" which would permit reopening a judgment and the granting of a new trial.

The evidence in the case before us was in possession of the plaintiff before the opinion and award of the Commission and is not therefore evidence that has been newly discovered since the trial before the Commission.

[7] After consideration of the motion and the supporting affidavit, we hold that the plaintiff's motion should not be allowed. Moreover, it does not meet the requirements of the rule so as to entitle him to a new hearing on the grounds of newly discovered evidence.

The opinion and award of the Commission denying plaintiff's claim for benefits under the Act is

Affirmed.

Judges PARKER and GRAHAM concur.