The Full Commission has reviewed the prior Amended Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments on appeal to the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission modifies and affirms the Deputy Commissioners Amended Opinion and Award and enters the following Opinion and Award.
 * * * * * * * * * * *
In their brief and in oral argument, defendants moved the Full Commission to admit into the evidence a packet of stipulated medical records that had not been included in the transcript. Those records are admitted and shall be attached to the transcript.
Additionally, defendants asked that the Commission review and consider as new evidence the correspondence from counsel to each other and to the Deputy Commissioner regarding stipulation of records and amendment of the Opinion and Award as these documents may be necessary to complete the record if this matter is appealed beyond the Full Commission. This motion is granted and those documents shall be added to the transcript as part of the record.
While not technically "newly discovered evidence, the correspondence is necessary to an understanding of the matters at issue in this appeal. The Full Commission, upon appeal from an Opinion and Award of the Deputy Commissioner, "has the discretionary authority to receive further evidence, regardless of whether it is newly discovered evidence. Harris v. FrankL. Blum Constr. Co. 10 N.C. App. 413, 179 S.E.2d 148 (1971).
 * * * * * * * * * * *
The Full Commission makes the following:
 PRELIMINARY FINDINGS OF FACT
This case was initially set before Deputy Commissioner Richard Ford in Benson on May 18, 1999. However, it was reassigned on or about May 6, 1999 to Lorrie L. Dollar for hearing. Deputy Commissioner Ford had ordered the parties to be prepared to present a Pre-Trial Agreement verbally at the start of the hearing. Thereafter, by Order filed on May 6, 1999, Lorrie L. Dollar directed the attorneys for both parties to prepare instead a written Pre-Trial Agreement to be presented at the start of the hearing. By letter dated November 9, 1999, counsel for defendants advised that plaintiff had submitted a proposed Pre-Trial Agreement to her prior to the hearing. However, plaintiffs counsel refused to agree to stipulate the records from Dr. Levey and the rehabilitation nurse into the evidentiary record with the Pre-Trial Agreement. Therefore, the parties were unable to prepare a fully executed Agreement to hand up at the hearing. In the absence of a signed Pre-Trial Agreement, the parties were required to make verbal stipulations of jurisdictional facts.
Following the hearing, plaintiffs counsel first refused to stipulate to the entry into evidence of plaintiffs primary treating physician, Dr. Leveys, medical notes or the case managers notes. Pursuant to Rule 612(2) of the Rules of Practice of the N.C. Industrial Commission, the Deputy Commissioner ordered the deposition of the case manager and Dr. Levey at plaintiffs expense. As Dr. Levey had moved his practice from North Carolina to Arizona since his last treatment of plaintiff, defendants had to locate Dr. Levey following the hearing. Defendants understood the Deputy Commissioners oral order at the hearing to allow them to submit certified copies of Dr. Leveys records into the record. Thus, defendants obtained a certified copy of records from Dr. Levey and at the end of June, 1999, submitted those to the Commission, along with a 25R which Dr. Levey completed indicating that plaintiff sustained a 10% impairment rating. Plaintiffs counsel received a copy of the letter and Dr. Leveys records. The letter from defense counsel clearly indicates that Dr. Levey had assigned a 10% rating.
In response to the correspondence from defense counsel and the certified records, plaintiffs counsel advised the Deputy Commissioner that he would not stipulate to the certified records and insisted that a deposition of Dr. Levey be scheduled. In light of this objection, defendants proceeded to schedule Dr. Leveys deposition. Dr. Leveys office would not speak to a paralegal from defense counsels office, therefore, defense counsel had to schedule the deposition herself. This process took numerous calls to Dr. Leveys office and calls to locate a court reporter in Arizona.
By letter dated July 21, 1999, plaintiffs counsel advised the Deputy Commissioner that he had "been informed that Dr. Levey had given his client a 10% disability rating and that, as a result, he was now willing to stipulate to Dr. Leveys records. Plaintiffs counsel failed to copy defendants on this correspondence, so that defense counsel continued efforts to schedule Dr. Leveys deposition. Only upon calling plaintiffs counsels office on July 28, 1999, for dates upon which plaintiffs counsel was available for the deposition was defense counsel advised that plaintiffs counsel would now stipulate to Dr. Leveys records. In light of plaintiffs counsels conduct related to Dr. Leveys records, defendants filed a motion for fees and sanctions on July 28, 1999.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties and at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. N.C. Farm Bureau Insurance Company was the carrier on the risk.
3. An employee-employer relationship existed between the parties on August 8, 1996.
4. The plaintiff sustained an admittedly compensable injury on August 8, 1996 when the scaffold on which he was working collapsed.
5. The plaintiffs average weekly wage was $216.18, which yields a maximum compensation rate of $144.13 per week.
6. The sole issue for determination is the extent of plaintiffs permanent impairment as a result of the compensable injury.
7. The parties stipulated medical reports into the record, which have been marked as Stipulated Exhibit 1. Included in this Exhibit are nine pages from Pinehurst Surgical Clinic (Dr. Mark Brenner), three pages from Dhillon Orthopedic Clinic (Dr. Paul Schricker), and seven pages from Betsy Johnson Memorial Hospital.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the admittedly compensable injury, the plaintiff was a thirty-four year old married male, who was employed as a carpenter by the defendant-employer. The plaintiff worked on third shift at Harnett Correctional Institute and performed carpentry work during the day.
2. As a result of the compensable injury, plaintiff injured his right foot. He was initially seen at the emergency room of Betsy Johnson Memorial Hospital where crutches and a soft dressing were given for the comminuted fracture of his right calcaneous bone. Plaintiff was referred to Dr. Ronald Levey.
3. On August 9, 1996, Dr. Ronald Levey examined plaintiff and recommended no weight bearing on the right foot for six weeks. Plaintiff was treated for his foot injury by Dr. Levey from August 9, 1996 through September 2, 1997. By February 1997, Dr. Levey opined that plaintiff was doing well and that his only complaint was that he could not run. Dr. Levey indicated that he did not believe plaintiff had any residual disability.
4. Plaintiff was temporarily totally disabled from work from August 8, 1996 through October 22, 1996 during which he received disability benefits from his employer. However, the defendants overpaid plaintiff through October 31, 1996.
5. On November 15, 1996, plaintiff returned to Dr. Levey, complaining of sharp stabbing pains in his right heel. Dr. Levey found plaintiffs fracture had healed and there was no tenderness in the fracture area. He concluded plaintiffs heel pain was due to overuse.
6. Plaintiff was discharged from Dr. Leveys care on February 21, 1997.
7. During 1997, Dr. Levey closed his office and moved his practice to Arizona.
8. On March 5, 1997, plaintiff sought an examination by Dr. Paul Schricker of Dhillon Orthopaedic and Sports Medicine Center. On April 10, 1997, Dr. Schricker found plaintiff retained a 3 percent permanent partial impairment of his right foot as a result of the work-related injury.
9. On August 18, 1997, plaintiff requested a second opinion on his right heel condition. The carrier referred the file to CorVel, where Susan Jackson was assigned as plaintiffs case manager. Ms. Jackson arranged for plaintiff to be evaluated by orthopaedic surgeon Dr. Mark Brenner of Pinehurst Surgical Clinic.
10. On September 25, 1997, Dr. Brenner ordered a CT scan. In a follow-up appointment, Dr. Brenner advised plaintiff had prominent osteoarthritis in the posterior facet of the subtalar joint with joint space narrowing and articular surface irregularity and osteophyte formation.
11. Dr. Brenner discussed the possibility of surgery to remove the bone spurs or a fusion. However, plaintiff declined surgery.
12. Dr. Brenner found plaintiff retained a twenty percent permanent partial impairment to his right foot as a result of the work-related injury. However, this rating is given less weight than the rating by Dr. Levey,
13. On June 30, 1998, Marita Collier, the workers compensation claims examiner, wrote to plaintiffs attorney, advising that the carrier had been trying to settle plaintiffs case since January of 1998. Ms. Collier stated that if Mr. Hawley did not wish to settle his claim with a Compromise Settlement Agreement, she had enclosed five copies of a Form 21 Agreement on which plaintiff would be paid for the permanent partial impairment. She requested that Mr. Adams reply as to plaintiffs intentions within thirty days. However, Mr. Adams did not respond to her letter. In addition, Ms. Collier made a number of telephone calls to Mr. Adams in an effort to obtain a reply to her letter.
14. Following receipt of these examination notes and impairment ratings, defendant-carrier attempted to finally resolve plaintiffs claim by settlement or by paying his rating through a Form 21. Defendant-carrier contacted plaintiffs counsel on numerous occasions offering to drop the perceived 0% rating from Dr. Levey and pay the average of the 3% and 20% ratings from Drs. Schricker and Brenner. Plaintiffs counsel failed to respond to these offers, except for one letter in February 1998.
15. On September 22, 1998, Ms. Collier wrote to the Commissions Executive Secretary to advise that her client wished to settle this claim, however, Mr. Adams would not return her telephone calls and had not responded to her correspondence in such a way as to move the matter to a resolution.
16. On October 22, 1998, plaintiffs counsel filed a Form 33 Request for Hearing on which he noted defendant refuses to pay the impairment rating assigned by the treating physician. On November 4, 1998, the defendants filed their 33R Response to Request for Hearing advising they had attempted to pay the impairment rating to plaintiff by settlement agreement and by Form 21. Defendants also moved for an assessment of fees and costs pursuant to N.C. Gen. Stat. 97-88.1.
17. On June 30, 1999, Dr. Levey rated plaintiff as retaining a ten percent permanent partial impairment to his right foot as a result of the work-related injury.
18. On examination, plaintiff had no gross deformity or swelling of the right heel. Flexion and extension of the ankle were retained and he had no neurological deformity. Plaintiff had subtalar motion of thirty degrees on the right and forty degrees on the left.
19. Three medical opinions regarding plaintiffs permanent impairment rating were given in this case. Dr. Levey, who was plaintiffs primary treating physician, treating plaintiff for over a year, opined that plaintiff sustained a 10% rating to his right foot as a result of the compensable injury. Dr. Schricker, whom plaintiff chose to see for a second opinion regarding the rating, opined that plaintiff sustained a 3% rating to his foot. Finally, Dr. Brenner, who saw plaintiff on only two occasions, opined that plaintiff sustained a 20% impairment rating to his foot.
20. According to Dr. Brenners testimony and a review of the North Carolina Industrial Commission rating guide, lack of range of subtalar motion in the foot would yield a 25% rating. Plaintiff retained some subtalar motion. Dr. Brenner testified that "it is for that reason that we fell short of the maximal rating of twenty-five percent. Clearly, there is room for medical disagreement as to the exact level of impairment plaintiff sustained in his right foot, as indicated from the range of opinions from 3% to 20%.
21. Throughout his treatment of plaintiff, Dr. Levey noted that plaintiffs range of motion was improving. Dr. Levey noted that plaintiff lacked approximately 15-20 degrees of subtalar range of motion, there was no gross instability of the ankle and no pain to palpation. Plaintiff also retained no neurological deformities. Upon these findings, Dr. Levey, who had treated plaintiff for the longest period and was most familiar with plaintiffs injury and his condition, opined that plaintiff sustained a 10% impairment rating.
22. The greater weight of the evidence supports a finding that plaintiff retains a 10 percent permanent impairment rating of percent to the right foot as a result of the admittedly compensable injury.
23. Plaintiffs counsels refusal to reply to the carriers repeated requests for settlement and Form 33 demanding settlement were within his legal rights. However, instead of merely not replying, a better route would have been for plaintiffs counsel to communicate to the carrier the fact that the proffered settlement was not acceptable to plaintiff.
24. Rule 612(2) of the Rules of Practice of the N.C. Industrial Commission provides:
 In cases where a party, or an attorney for either party, refuses to stipulate medical reports and the case must be reset or depositions ordered for testimony of medical witnesses, a Commissioner or Deputy Commissioner may in his discretion assess the costs of such hearing or deposition, including reasonable attorney fees, against the attorney or his client who refused the stipulation. (Emphasis added)
25. The reasonable costs of scheduling the deposition of Dr. Levey and finding a court reporter in Arizona, including the time involved and the necessity of attorney rather than paralegal involvement, is $1,000. Plaintiffs counsels failure to timely notify defendants counsel that he had changed his mind and would stipulate to the medical records of Dr. Levey caused defendants to incur expenses in the amount of $1,000 they otherwise would not have incurred. Application of Rule 612(2) to the plaintiffs attorneys conduct is appropriate where such conduct caused the Deputy Commissioner to have to order a deposition to be taken and expenses were incurred therefor.
 * * * * * * * * * * *
Based upon the foregoing findings of fact the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. As a result of plaintiffs compensable injury, he is entitled to permanent partial disability compensation at the rate of $144.13 per week for 14.4 weeks for the 10 percent rating to the right foot. N.C. Gen. Stat. 97-31 (14). The defendants are entitled to a credit for overpayment of benefits. N.C. Gen. Stat.97-42.
2. The plaintiff is entitled to have the defendants pay for medical expenses incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. 97-2(19), 97-25.
3. Pursuant to Commission Rules 612(2) and 802, the Commission may impose sanctions against a party or the partys counsel. As a result of plaintiffs counsels failure to timely notify defendants prior to their efforts to schedule an out-of-state deposition necessitated by plaintiffs counsel, it is reasonable to require plaintiffs counsel to pay $1,000.00 to defendants counsel. SeeHauser v. Advanced Plastiform, Inc., ___ N.C. App. ___,514 S.E.2d 545 (1999).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to a reasonable attorneys fee herein approved, the defendants shall pay permanent partial disability compensation to the plaintiff at the rate of $144.13 per week for 14.4 weeks. Said compensation has accrued and shall be paid in a lump sum, less the credit to which the defendants are entitled due to overpayment of benefits.
2. A reasonable attorneys fee of 25% of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
3. Defendants shall pay medical expenses incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiffs counsel shall pay $1,000.00 to defendants counsel pursuant to Rules 612(2) and 802 of the Rules of Practice of the N.C. Industrial Commission.
5. Defendants shall pay the costs, including an expert witness fee of $275.00 to Mark Brenner, M.D.
This 25th day of April 2000.
 S/ ____________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ____________________ CHRISTOPHER SCOTT COMMISSIONER
S/ ____________________ DIANNE C. SELLERS COMMISSIONER