* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, rehear the parties or their representatives or amend the Opinion and Award; however, the Full Commission, in its discretion, has determined that there are good grounds in this case to receive further evidence. Accordingly, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner and makes the following evidentiary ruling.
 * * * * * * * * * * * EVIDENTIARY RULING
The Full Commission admits into evidence e-mail communications from November 12 to 14, 2002, between Anissa Rice and Rhesha Williams, which the Deputy Commissioner admitted into the Record as an offer of proof.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has proper jurisdiction over this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
4. At all relevant times, an employment relationship existed between the plaintiff and the defendant-employer.
5. Liberty Mutual was the compensation carrier on the risk.
6. All of plaintiff's medical records were to be submitted as a Stipulated Exhibit.
7. All Industrial Commission forms and filings were to be submitted as a Stipulated Exhibit.
8. Plaintiff's average weekly wage is to be determined, resulting in a compensation rate to be determined.
9. Plaintiff's date of injury is November 1, 1999.
In addition, the parties submitted a Stipulation of medical records that was received as Stipulated Exhibit 2. A Stipulation of Industrial Commission forms was received as Stipulated Exhibit 3.
 * * * * * * * * * * *
Based upon all the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-five years of age. She has an associate's degree in dental hygiene from Erie College and worked as a dental hygienist for thirty-one years. Prior to her work with defendant-employer, she had no significant back injuries and no significant history of any psychiatric problems.
2. Plaintiff began work with defendant-employer in 1996 as a dental hygienist.
3. On or about November 1, 1999, plaintiff sustained an admittedly compensable specific traumatic incident resulting in injury to her back. Defendants provided medical treatment and indemnity compensation at the rate of $367.30 per week.
4. Plaintiff initially presented to her family practitioner, Dr. Warren Blackburn, in Louisburg, North Carolina. Dr. Blackburn referred her to Dr. Kenneth Rich, a neurosurgeon in Raleigh.
5. When conservative treatment by Dr. Rich was unsuccessful, and when objective diagnostic testing revealed significant abnormalities in plaintiff's cervical spine, Dr. Rich performed an anterior cervical diskectomy and fusion at two levels on May 3, 2000.
6. Plaintiff's pain and other symptoms were not significantly relieved by this procedure. She required ongoing medication and treatment and returned to Dr. Blackburn.
7. Because of plaintiff's continued symptoms, Dr. Blackburn referred her to Dr. Michael Haglund, a neurosurgeon at Duke University Medical Center. Dr. Haglund found plaintiff was having severe pain in her neck radiating down her shoulder and to her left arm. Diagnostic studies revealed a narrowing of the nerves at two levels in plaintiff's cervical spine. Injections did not provide significant relief. Accordingly, Dr. Haglund scheduled and performed a two-level posterior cervical foraminotomy, "to open up the holes that nerves are going out" in October of 2001.
8. Thereafter, plaintiff underwent extensive physical therapy. Because of continued symptoms, she was referred to Dr. Laurence Higgins, an orthopaedic surgeon, who ruled out any problems with her shoulder contributing to her chronic pain. Dr. Haglund thereafter referred plaintiff to the Duke Pain Clinic where she presented to Dr. Diane Scott. Dr. Scott performed three nerve block injections. These provided only minimal improvement.
9. Dr. Haglund noted the patient had objective findings, would likely require long term medical care including possible surgery, and so far as he knew, the pain was real to plaintiff. Thereafter, Dr. Haglund referred plaintiff to Dr. Warren Blackburn in Louisburg for medication management because, from a surgical standpoint, "there was nothing more we could do to get pressure off the nerves." Defendants refused to authorize care and treatment with Dr. Blackburn.
10. According to the testimony of Resha Williams, an adjuster for defendant-carrier, defendants interpreted this referral to mean that Dr. Blackburn was only authorized to prescribe maintenance medications and not to treat plaintiff or to refer her for tests even though Ms. Williams admitted that Dr. Blackburn was, and continued to be, the only attending physician. Ms. Williams further testified that she instructed the rehabilitation provider to disregard Dr. Blackburn's restrictions and deny his referrals. Ms. Williams testified that defendants considered the last treating specialist, Dr. Haglund, to be the treating physician even though he had discharged plaintiff to Dr. Blackburn.
11. Both Dr. Haglund and Dr. Rich assigned a fifteen percent (15%) permanent partial disability rating to the back pursuant to the Industrial Commission Rating Guide for "recurrent episodes of significant pain associated with objective findings." This is the maximum permanent partial disability rating for the procedure performed.
12. Both Drs. Haglund and Rich confirmed their opinions that the pain was real to plaintiff. Both confirmed that, even with technically perfect surgeries, not all patients would have an optimum recovery. No medical provider has, to his or her knowledge, ever accused plaintiff of malingering in any way. Dr. Blackburn testified that plaintiff's subjective complaints of pain are consistent with her objective findings, which have justified the two surgeries.
13. Plaintiff attempted to return to work following the surgery by Dr. Rich; however, this was unsuccessful.
14. In 2002, plaintiff underwent a functional capacity evaluation. This was performed on a single day for only a few hours and at a time when plaintiff was taking narcotic pain relieving medication. Despite the medication, plaintiff was only able to function at the lightest level — sedentary. This test did not measure the level of activity plaintiff is capable of sustaining over time in an actual work environment, nor did it measure plaintiff's drug-free functional capacity. As such, the Full Commission finds that the functional capacity evaluation has little relevance in determining plaintiff's present disability.
15. Plaintiff has continued to treat with Dr. Warren Blackburn. Dr. Blackburn has continued the medication regimen initiated at Duke, including Oxycontin and other medications. No medical witness has testified this course of treatment is inappropriate in any way or that such treatment is not reasonably required to give relief from plaintiff's symptoms.
16. In addition, although defendants paid for some prescription medications, plaintiff and her husband have suffered financial consequences as a result of refusals of defendant-carrier, Liberty Mutual Insurance Company, to authorize prescription medications, and its requirement that a separate authorization be obtained each time a prescription is presented to be filled or refilled. At the hearing before the Deputy Commissioner, plaintiff testified that for the months of June, July and August, defendant-carrier, Liberty Mutual Insurance Company, denied her medications related to her compensable injury. Although Resha Williams, an adjuster for defendant-carrier, Liberty Mutual, testified that the pharmacy must have had a "computer glitch," which required the separate authorizations, the Full Commission finds that defendants have presented no reasonable excuse for this conduct.
17. In his deposition testimony, Dr. Blackburn opined that plaintiff is permanently and totally disabled from all competitive employment. His written work restrictions indicate plaintiff is capable of working less than eight hours per day, requires breaks as needed from both sitting and standing positions, has significant posture and lifting limitations and has suffered adverse interpersonal relations including withdrawal, anxiety and medication side effects as a result of her condition.
18. Drs. Haglund and Rich testified they have no medical reason to disagree with the opinions of Dr. Blackburn and they have no knowledge of plaintiff's present medical condition.
19. Defendant-carrier, Liberty Mutual Insurance Company, assigned Anissa Rice of Cascade Rehabilitation to provide vocational consultant services in this case. Ms. Rice is an expert in the field of vocational rehabilitation. Cascade Rehabilitation is a wholly owned subsidiary of Liberty Mutual Insurance Company.
20. Introduced at the hearing before the Deputy Commissioner as an offer of proof were Plaintiff's Exhibits One, Two and Three, consisting of a series of e-mails between Ms. Rice and Rhesha Willliams and Ms. Rice and Sharon Chasteen, Regional Manager for Cascade Disability Management. These e-mails document the defendant-carrier's (Liberty Mutual Insurance Company), handling of this claim, its intent to pressure plaintiff to settle her claim as well as defendant-carrier's direction to Ms. Rice to disregard the restriction of the treating physician, Dr. Blackburn. These e-mails are included in their entirety below:
From: Anissa.Rice
Sent: Tuesday, November 12, 2002, 4:26 PM
To: rhesha.williams
Subject: P.Porter
 Ms. Porter had to cancel her appointment on 11/14 as it was the same day as her biofeedback.
 I will have to reschedule her appointment for when she returns from holiday. (Unsure when this will be, most likely first week of December)
From: Williams, Rhesha
Sent: Wednesday, November 13, 2002, 8:36 AM
To: anissa.rice
Cc: Davis, Jonathan
Subject: RE: P. Porter
 You should reschedule immediately. not around her time but your time. Voc does not accommodate holidays. There is no such thing as vacation time when you are collecting WC. We don't work on 11/28 and 11/29 so those days we should not schedule, outside that I want her seen before the end of the month. In the future when she misses for an appointment please reschedule immediately. Also plan out your meetings for the month of December as well (if possible I would like for you to met w/her twice in December to go over leads and verify her compliance. I want you to check every lead you provide and if she is not applying that is grounds for termination of benefits.) We need to remain aggressive on this file and if she fails to show I want to know immediately because I plan to terminate her benefits. This will force her to settle because she will not have time to comply and that is the objective here. Settle or be terminated!
(Emphasis added.)
* * *
From: Anissa.Rice
Sent: Wednesday, November 13, 2002, 9:46 AM
To: sharon.chasten
Subject: FW P. Porter
 Sharon, I have some problems with this. I will not schedule an appointment with this claimant when I know she is not going to be in town. She is leaving to visit family for Thanksgiving is not planning on being back until the first of December. why should she not have vacation, she would have had it at work. And also I think that Rhesha forgets this woman was a part-time hourly worker. I know she does not like this woman because she was partially retired with her husband and they go to Florida for a few months in the winter, but this is not my fight. I will reschedule as soon as possible but I will not purposefully set this woman up.
 Please give me some insight into this adjuster as she seems really harsh on her claimants.
 Also her attorney would not allow this anyway. He will just file a motion and slap Cascade with an injunction for inappropriate activity on a voc. file.
 Please advise on how to respond as I do not know these adjusters that well yet, and don't want to burn any bridges here.
From: Sharon.chasten
Sent: Wednesday, November 13, 2002, 6:31 PM
To: anissa.rice
Subject: RE: P.Porter
 I think we need to discuss this. I am out of town but will try to get you between meetings. I think Rhesha has a right to say she has to be available for work. Leaving now and not returning til Dec 1 is pushing a bit when the law says you have to be available for work to receive benefits. Rhesha is tough, and not one we want to alienate. Is there any way you can schedule an appointment before she leaves. I am rambling, and I understand what you are saying, but it does appear the claimant may be pushing. I will try to call you so we can discuss. S.
* * *
From: Anissa.Rice
Sent: Thursday, November 14, 2002, 11:48 AM
To: rhesha.williams
Cc: sharon.chasten
Subject: peggy porter
Rhesha,
 I tried to reschedule Ms. Porter for tomorrow or Monday. However, her attorney Michael Ballance will not consent to vocational meetings at this time. He has basically said that he will not agree to let her meet with me until she has been released from pain management.
 I know that she is meeting today with the biofeedback counselors for a recommendation on treatment. Mr. Ballance has stated that he will inform me as to what the recommendations are and the duration of treatment.
 Sorry, I could not do more at this time. I will gladly work with everyone to move this file along; at this time I cannot schedule meetings when the attorney has blocked vocational activities due to the fact the claimant is still treating medically.
From: Williams, Rhesha
Sent: Thursday, November 14, 2002, 1:03 PM
To: anissa.rice
Subject: RE: peggy porter
 I need you to schedule the appointment anyway and allow the attorney to formally deny or block treatment through the right channels and in writing. In the future, please schedule all appointments in writing with at least a weeks notice with a copy to me and attny. Do not call the attorney back. Please send him a letter as well as the claimant with the date and time of an appointment with at least a wk notice. Pain Management was to maintain her medications, not treatment. Biofeedback was an evaluation to determine how to get clmt moving along and off certain medications. Once the appointment is scheduled and all parties are informed I will handle from there. Please refer the attny to me when he calls you about why an appt was scheduled.
* * *
From: Williams, Rhesha
Sent: Tuesday, August 26, 2003, 4:22 pm
To: anissa.rice@cascadedisability.com
Subject: Peggy Porter
 Dr. Blackburn cannot provide restrictions. He is only authorized to prescribe ongoing medication. She was not released by the other specialist w/these restrictions so please continue to look for work outside of 15 minutes of driving.
21. After Ms. Rice provided plaintiff's counsel with copies of the e-mail correspondence between herself and Rhesha Williams, Cascade Rehabilitation terminated Ms. Rice's employment. In her deposition testimony, Ms. Rice stated that her supervisors at Cascade Rehabilitation specifically addressed the company's displeasure with her in providing the e-mail correspondence to plaintiff's counsel and that this was the reason for her termination.
22. At the hearing before the Deputy Commissioner, although the adjuster for defendant-carrier (Liberty Mutual Insurance Company), Rhesha Williams, testified, she was unable to provide a reasonable excuse for failure to authorize Dr. Blackburn as a treating physician, for delays and refusals to authorize medications and necessary treatment for plaintiff or for her intentional interference with the independence of the vocational consultant assigned in this case. Accordingly, at the hearing on October 29, 2003, the Deputy Commission ordered Rhesha Williams to be removed from this case and Ms. Rice to be retained.
23. In her deposition testimony, Ms. Rice stated that she had conducted multiple meetings with the plaintiff and her husband, had personally observed plaintiff's condition, had observed her to be in obvious pain and distress, had observed occasions when plaintiff was emotional and crying, had attended meetings to which plaintiff's husband had to drive her because of her medical condition, and was of the opinion plaintiff is totally disabled from competitive employment.
24. Dr. Blackburn testified that he had been treating plaintiff for depressive symptoms for quite some time and has tried a number of different medicines. Dr. Blackburn opined that psychiatric care is necessary for plaintiff and that the chronic pain, trials, tribulations and evaluations that plaintiff has gone through certainly contributed to her need for psychiatric treatment. Having treated plaintiff for depression over the years, Dr. Blackburn opined that it was reasonable to refer plaintiff to a psychiatrist and that her depression is related to and exacerbated by her chronic pain from her compensable injury. The Full Commission finds that it is reasonable to conclude that plaintiff would likely benefit from an evaluation with a psychiatrist and she is entitled to the same.
25. The Full Commission finds that plaintiff has reached maximum medical improvement and based on the medical evidence, her symptoms are likely to continue.
26. Plaintiff requires frequent, unscheduled breaks, experiences chronic pain increasing with activity and with sufficient severity to cause interference with daily living activities and to preclude many hobbies in which she previously engaged.
27. The greater weight of the credible evidence establishes and the Full Commission finds that plaintiff is totally disabled from all competitive employment.
28. The Full Commission finds that defendant-carrier, Liberty Mutual Insurance Company, has willfully and without justification refused or delayed in authorizing necessary medical care and treatment directed by plaintiff's treating physicians, has intentionally interfered with plaintiff's assigned vocational consultant to encourage what appears to be set-up tactics under a rehabilitative guise with the intention of ending this claim for their own financial advantage and has defended this claim without reasonable ground.
29. The Full Commission finds that plaintiff is entitled to reimbursement for all out of pocket expenses associated with necessary prescription medications, sick travel, medical co-payments and other care and treatment expenses incurred as a result of plaintiff's admittedly compensable injury and chronic symptoms.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission finds the following:
 CONCLUSIONS OF LAW
1. Under its plenary powers, the Full Commission may adopt, modify, or reject the findings of fact of a Deputy Commissioner, and in doing so may weigh the evidence and make its own determination as to the weight and credibility of the evidence.Hobgood v. Anchor Motor Freight, 68 N.C. App. 783,316 S.E.2d 86 (1984)
2. Whether good ground is shown for the taking of further evidence is within the sound discretion of the Commission, and its ruling in that regard will not be reviewed on appeal absent a showing of manifest abuse of discretion. Guy v. BurlingtonIndus., 74 N.C. App. 685, 329 S.E.2d 685 (1985); Harris v.Frank L. Blum Constr. Co., 10 N.C. App. 413, 179 S.E.2d 148
(1971).
3. As a direct result of the work assigned on or about November 1, 1999, plaintiff sustained a specific traumatic incident arising out of and in the course of her employment, which resulted in a disabling injury to her back, neck and left arm. N.C. Gen. Stat. § 97-2(6).
4. As a direct and proximate result of plaintiff's compensable injury to her back, neck and left arm, plaintiff is entitled to compensation for total disability at the rate of $367.30 per week beginning November 1, 1999, and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. As a result of plaintiff's compensable injury by accident, plaintiff has incurred and continues to incur expenses for medical treatment that are necessary to effect a cure, provide relief and/or lessen her period of disability. Dr. Warren Blackburn is designated as plaintiff's authorized treating physician for the direction and management of her medical treatment. The plaintiff is entitled to payment of said expenses by defendants, including payment for expenses for treatment for chronic pain, a psychiatric evaluation for conditions related to plaintiff's compensable injury, as recommended by plaintiff's authorized treating physician, Dr. Blackburn, and for reimbursement for all reasonable and necessary out of pocket expenses associated with prescriptions, medications, sick travel, medical co-payments and other care and treatment expenses incurred as a result of plaintiff's admittedly compensable injury of November 1, 1999. N.C. Gen. Stat. § 97-25.
6. Pursuant to N.C. Gen. Stat. § 97-88, the Full Commission has discretion to award reasonable attorney's fees for appeals brought by defendants when the Industrial Commission orders defendants to make or continue payments of compensation to the injured employee. Attorney's fees are awarded for the portion of the case attributable to defendants' appeal. Troutman v. White Simpson, Inc., 121 N.C. App. 48, 464 S.E.2d 481 (1995), disc.review denied, 343 N.C. 516, 472 S.E.2d 26 (1996).
7. Defendants' refusal to authorize Dr. Blackburn as plaintiff's authorized treating physician, their refusal and delay in providing prescription medications, their interference with the independence of the vocational consultant and their attempts to manipulate this case under the guise of rehabilitation constitute an unreasonable defense of this claim and a willful failure to comply with known rules of the Industrial Commission. N.C. Gen. Stat. § 97-88.1, Rule 407 of the Workers' Compensation Rules of the North Carolina Industrial Commission and the Rules for Rehabilitation Professionals.
8. Pursuant to N.C. Gen. Stat. § 97-88.1, the Industrial Commission is authorized to assess attorney's fees in any case either prosecuted or defended without reasonable ground. The purpose of this section is "to prevent stubborn, unfounded litigiousness which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to injured employees." Troutman, 121 N.C. App. at 48.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees approved herein, defendants shall pay to plaintiff total disability compensation at the rate of $367.30 per week beginning November 1, 1999, and continuing until further order of the Industrial Commission. Any accrued compensation shall be paid to plaintiff in a lump sum.
2. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury, for so long as such treatment tends to effect a cure, give relief or lessen the period of plaintiff's disability. Dr. Blackburn is approved as plaintiff's treating physician. Medical expenses shall include payment for treatment for chronic pain, a psychiatric evaluation for conditions related to plaintiff's compensable injury, as recommended by plaintiff's authorized treating physician, Dr. Blackburn and reimbursement for all reasonable and necessary out of pocket expenses associated with prescriptions, medications, sick travel, medical co-payments and other care and treatment expenses incurred as a result of plaintiff's admittedly compensable injury of November 1, 1999.
3. The Full Commission deems it appropriate to award a reasonable attorney's fee to plaintiff's counsel for the defense of this appeal pursuant to N.C. Gen. Stat. § 97-88, upon submission by plaintiff's counsel of an Affidavit for Fees to the Industrial Commission for approval. Once approved by the Industrial Commission, this fee is to be paid by defendants and is in addition to the fees awarded as a percentage of plaintiff's compensation.
4. As sanctions for defendants' unreasonable defense of this claim, defendants shall pay directly to plaintiff's counsel attorney's fees in an amount equal to twenty-five percent (25%) of plaintiff's benefits. Accordingly, defendants shall forward directly to plaintiff's counsel, as his fee, an amount equal to twenty-five (25%) of any accrued benefits owing plaintiff and thereafter, defendants shall forward an amount equal to every fourth compensation check. These amounts shall not be deducted from plaintiff's benefits.
5. This case is hereby referred to the North Carolina Department of Insurance for investigation of possible violations of unfair claim handling and settlement practices under Chapter 58 of the North Carolina General Statutes.
6. Defendants shall pay the costs.
This the 19th day of April 2006.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER