ROLANDO FLORES, EMPLOYEE-PLAINTIFF v. STACY PENNY MASONRY COMPANY, DEFENDANT-EMPLOYER; AETNA CASUALTY AND SURETY CO., CARRIER-DEFENDANT

No. COA98-1047

(Filed 3 August 1999)

### 1. Workers' Compensation— physical and vocational abilities—suitable jobs presently available

The Industrial Commission did not err in awarding plaintiff-employee temporary total disability benefits on an admittedly compensable injury to his left knee. Defendant-employer's showing that more than one year ago plaintiff held a job that would seemingly suit his current physical and vocational abilities was not sufficient to prove that suitable jobs were presently available and he was capable of getting one.

### 2. Workers' Compensation— termination for misconduct unrelated to compensable injury

The Industrial Commission did not err in concluding that plaintiff-employee was terminated from his employment with defendant-employer because of his injury and not because of misconduct unrelated to his compensable injury. Plaintiff's medical record revealed he missed a considerable amount of work because of his work-related injury and his employer admitted plaintiff would not have been fired for taking a day off to tend to personal matters if his attendance was satisfactory. In order to bar the employee from receiving disability benefits, the employer must show the employee was terminated for misconduct or fault unrelated to the compensable injury for which a nondisabled employee would ordinarily have been terminated.

### 3. Workers' Compensation—expenses incurred on appeal

Plaintiff-employee is entitled to receive from defendant-employer the expenses incurred as a result of this appeal because

**FLORES v. STACY PENNY MASONRY CO.**

[134 N.C. App. 452 (1999)]

defendant was ordered to continue paying temporary total disability benefits to the employee. N.C.G.S. § 97-88.

Appeal by defendants from opinion and award entered 4 June 1998 by the North Carolina Industrial Commission. Heard in the Court of Appeals 28 April 1999.

*Robert J. Willis for plaintiff-appellee.*

*Battle, Winslow, Scott & Wiley, P.A., by M. Greg Crumpler, for defendants-appellants.*

TIMMONS-GOODSON, Judge.

Stacy Penny Masonry Company ("defendant-employer") and Aetna Casualty Insurance Company ("defendant-carrier") (collectively, "defendants") appeal from an opinion and award of the North Carolina Industrial Commission ("the Commission") awarding temporary total disability benefits to Rolando Flores ("plaintiff") on an admittedly compensable injury to his left knee. Having examined the issues raised by this appeal, we affirm the opinion and award of the Commission.

The relevant facts are as follows: On 9 April 1992, plaintiff, who was then employed with defendant-employer as an assistant brick mason and general laborer, sustained an injury by accident to his left knee when a wheelbarrow loaded with bricks overturned on his left leg. The parties subsequently entered into a Form 21 Compensation Agreement, and the Commission approved the agreement on 12 May 1992. According to Dr. S. Robert Bylciw, plaintiff's treating physician, plaintiff's injuries consisted of a torn medial meniscus and a torn anterior cruciate ligament. Dr. Bylciw performed arthroscopic surgery on plaintiff's knee to repair the torn meniscus. Plaintiff's torn anterior cruciate ligament was treated conservatively with a post-operative rehabilitation program, including physical therapy and exercise.

Plaintiff returned to work on 9 June 1992 but regularly followed up with Dr. Bylciw. Although plaintiff continued to improve during the summer and fall of 1992, he experienced periodic swelling, buckling, and giving way of the knee while he worked. Dr. Bylciw, therefore, recommended intermittent time off from work and continued physical therapy. Consequently, plaintiff periodically missed work between 9 June 1992 and 16 April 1993, when his employment with defendant-employer was terminated.

Following his termination, plaintiff worked in a variety of short-term jobs: (1) as a laborer in a tobacco warehouse for less than one day; (2) as a pipe layer from the end of April 1993 to 21 June 1993; and (3) as a painter from 1 June 1993 to 21 June 1993. Plaintiff left his painting and pipe laying jobs because of continuing pain in his knee. He left the tobacco warehouse position for reasons unrelated to his compensable injury. On 1 September 1993, plaintiff began working as a laborer for F.T. Williams, a construction company. His duties consisted of assisting mechanics, washing cars, and moving barrels and materials. Plaintiff worked for F.T. Williams until 23 November 1993, when he left due to problems with his knee.

In December of 1993, Dr. Bylciw determined that the conservative treatment of plaintiff's torn anterior cruciate ligament was unsuccessful and, on 17 December 1993, performed a repeat arthroscopy of plaintiff's left knee. After the surgery, plaintiff began a program of extensive physical therapy to increase the strength and range of motion in his knee. On 11 July 1994, while engaged in physical therapy, plaintiff re-injured his knee by tearing his medial meniscus again. Dr. Bycliw performed an arthroscopic operation on 8 December 1994 to repair this injury.

On 22 February 1995, Dr. Bylciw determined that plaintiff had reached maximum medical improvement and, in restricting his work capacity, required plaintiff to avoid repetitive motion of the left knee. In addition, Dr. Bylciw insisted that plaintiff work only on flat surfaces, avoid frequent climbing, and abstain from roofing or other elevated work. Plaintiff returned to work at F.T. Williams on 17 March 1995 but, due to continued pain in his knee, left that job on 17 June 1995. Plaintiff then began working as a dishwasher at Oliver's Family Restaurant ("Oliver's") on 28 August 1995. However, on 24 September 1995, plaintiff left that position, again due to difficulties with his knee. Dr. Bylciw assigned an 18% permanent partial disability to plaintiff's left knee on 21 November 1995.

On 6 March 1996, plaintiff sought treatment from Dr. Andrew P. Bush for continuing pain in his knee. Dr. Bush recommended physical therapy. Following a program of strengthening exercises, plaintiff's physical therapist noted on 19 November 1996 that plaintiff was capable of complete stabilization of his left knee and that he was able to achieve multiple squat positions of near full-depth, ascend and descend stairs without difficulty, and repeat groups in multidirectional step-up activities. On 4 March 1997, Dr. Bush re-examined plaintiff and concluded that he had reached maximum medical

FLORES v. STACY PENNY MASONRY CO.

[134 N.C. App. 452 (1999)]

improvement, thereupon assigning him a permanent partial disability rating of 25% to his left knee. Dr. Bush further stated that plaintiff retained some clinical instability of the knee, which would hamper his ability to return to construction work.

Plaintiff filed a request for hearing, and the matter was heard before Deputy Commissioner W. Bain Jones, Jr. on 21 October 1996. On 30 June 1997, the deputy commissioner entered an opinion and award granting plaintiff temporary total disability compensation from 16 April 1993 to 1 September 1993, from 12 November 1993 to 17 December 1993, from 17 June 1995 to 28 August 1995, and from 25 September 1995 to present. Defendants appealed this ruling to the Full Commission, which affirmed with minor modifications to the findings of fact. Again, defendants appeal.

---

On appeal, defendants first argue that the Commission erred in awarding temporary total disability to plaintiff from 25 September 1995 to the present. Defendants contend that because the dishwashing position at Oliver's was suitable to plaintiff's physical condition, they have successfully rebutted the presumption that plaintiff continues to be disabled. Defendants maintain that, as a result, plaintiff was only entitled to partial compensation under section 97-30 of the North Carolina General Statutes for the period after he left Oliver's. We cannot agree.

The law governing this Court's review of an opinion and award entered by the Full Commission is well settled. Our analysis is confined to two questions: (1) whether there is any competent evidence in the record to support the Commission's findings of fact, and (2) whether the Commission's findings of fact, in turn, support its conclusions of law. *Simmons v. N.C. Dept. of Transportation*, 128 N.C. App. 402, 405-06, 496 S.E.2d 790, 793 (1998). If the record contains any evidence to support the Commission's findings of fact, they are binding on appeal. *Hedrick v. PPG Industries*, 126 N.C. App. 354, 484 S.E.2d 853, *disc. review denied*, 346 N.C. 546, 488 S.E.2d 801 (1997). This is true, even if there is evidence to support contrary findings. *Id.* The Commission's conclusions of law, however, are fully reviewable. *Grantham v. R.G. Barry Corp.*, 127 N.C. App. 529, 491 S.E.2d 678 (1997), *disc. review denied*, 347 N.C. 671, 500 S.E.2d 86 (1998).

An injured employee seeking to be compensated for a disability under the Workers' Compensation Act must initially establish both the existence and the extent of the disability. *Franklin v. Broyhill*

*Furniture Industries,* 123 N.C. App. 200, 205, 472 S.E.2d 382, 386, *cert. denied,* 344 N.C. 629, 477 S.E.2d 39 (1996). "Disability" refers to the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (Cum. Supp. 1997). Where, as in the instant case, a Form 21 Agreement has been executed by the parties and approved by the Commission, the employee is entitled to a presumption that he is, indeed, disabled. *Saums v. Raleigh Community Hospital,* 346 N.C. 760, 764, 487 S.E.2d 746, 750 (1997). Therefore, he is relieved of the burden to prove his disability. *Franklin,* 123 N.C. App. at 205, 472 S.E.2d at 386.

Once disability is established, by presumption or otherwise, the employer has the burden of producing evidence "that suitable jobs are available to the employee and 'that the [employee] is capable of getting one,' taking into account the employee's 'age, education, physical limitations, vocational skills, and experience.' " *Smith v. Sealed Air Corp.,* 127 N.C. App. 359, 361, 489 S.E.2d 445, 447 (1997) (quoting *Franklin,* 123 N.C. App. at 206, 472 S.E.2d at 386). The employee is deemed to be " 'capable of getting' " a job if " 'a reasonable likelihood [exists] that he would be hired if he diligently sought the job.' " *Burwell v. Winn-Dixie Raleigh,* 114 N.C. App. 69, 73-74, 441 S.E.2d 145, 149 (1994) (quoting *Trans-State Dredging v. Benefits Review Bd.,* 731 F.2d 199, 201 (4th Cir. 1984)).

[1] In the case *sub judice,* the Commission made the following relevant findings of fact concerning plaintiff's present earning capacity:

29. The medical evidence tends to show that upon plaintiff's reaching maximum medical improvement, it may have been difficult for him to perform certain types of construction jobs. The evidence also tends to show that jobs of the type held by plaintiff at Oliver's Restaurant are within plaintiff's physical and vocational capabilities.

30. Although plaintiff obtained a job at Oliver's which would appear to be within his current physical and vocational capabilities, he left that job more than a year before he received additional physical therapy and reached maximum medical improvement. Plaintiff's success in obtaining the Oliver's job is not sufficient to rebut the presumption of continuing disability. Defendants have not offered any evidence as to the current availability of suitable employment within plaintiff's physical and

**FLORES v. STACY PENNY MASONRY CO.**

[134 N.C. App. 452 (1999)]

vocational limitations, or of plaintiff's capability of obtaining such employment.

After carefully examining the record, we hold that the Commission's findings were supported by competent evidence. Defendants had presented no evidence that plaintiff was <u>presently</u> employable. To show that more than one year before this matter was initially heard, plaintiff held a job that would seemingly suit his current physical and vocational abilities was not sufficient to prove "that suitable jobs *[are] available* to the employee and 'that the [employee] is capable of getting one.'" *Smith*, 127 N.C. App. at 361, 489 S.E.2d at 447 (quoting *Franklin*, 123 N.C. App. at 206, 472 S.E.2d at 386). Insofar as the Commission was correct in finding that defendants had failed to rebut the presumption of continuing disability as to plaintiff, the Commission was likewise correct in concluding that plaintiff was entitled to temporary total disability after 25 September 1995. Defendant's argument, then, fails.

[2] Next, defendants argue that the Commission erred in ruling that plaintiff was entitled to temporary total disability benefits for the period between 16 April 1993, the date plaintiff was terminated, and 17 December 1997, the date disability payments were resumed following plaintiff's second arthroscopic surgery. Relying on our decision in *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 472 S.E.2d 397 (1996), defendants contend that the evidence before the Commission compelled a finding that plaintiff was terminated from his employment with defendant-employer because of misconduct unrelated to his compensable injury. Again, we disagree.

In *Seagraves*, this Court held as follows regarding the effect of an employee's termination on his entitlement to disability benefits:

[W]here an employee, who has sustained a compensable injury and has been provided light duty work or rehabilitative employment, is terminated from such employment for misconduct or other fault on the part of the employee, such termination does not automatically constitute a constructive refusal to accept employment so as to bar the employee from receiving benefits for temporary partial or total disability. Rather, the test is whether the employee's loss of, or diminution in, wages is attributable to the wrongful act resulting in loss of employment, in which case benefits will be barred, or whether such loss or diminution in earning capacity is due to the employee's work-related disability, in which case the employee will be entitled to benefits for such disability.

Therefore, in such cases the employer must first show that the employee was terminated for misconduct or fault, unrelated to the compensable injury, for which a nondisabled employee would ordinarily have been terminated. If the employer makes such a showing, the employee's misconduct will be deemed to constitute a constructive refusal to perform the work provided and consequent forfeiture of benefits for lost earnings, unless the employee is then able to show that his or her inability to find or hold other employment of any kind, or other employment at a wage comparable to that earned prior to the injury, is due to the work-related disability.

*Id.* at 233-34, 472 S.E.2d at 401. In considering these questions, the Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Floyd v. First Citizens Bank*, 132 N.C. App. 527, 512 S.E.2d 454 (1999).

Regarding plaintiff's termination, the Commission found as follows:

9. Plaintiff's physical disability resulting from his knee injury and subsequent treatment caused him to miss work intermittently between 9 June 1992 and 16 April 1993.

10. On 16 April 1993, Stacy Penny came to take plaintiff to work. Plaintiff indicated that he would not be able to work that day because he had to pick up a relative at the airport. Mr. Penny stated that plaintiff had missed a great deal of work and he had to have someone who would work. When plaintiff indicated that he would not be able to go to work that day, Mr. Penny terminated his employment.

11. Plaintiff's employment was terminated as a direct result of time missed from work over a period of several months due to his continuing disability caused by his compensable injury, and not for misconduct or other just cause.

Plaintiff's testimony, the testimony of his treating physician, Dr. Bylciw, and plaintiff's medical records proved that he missed a considerable amount of work from 9 June 1992 to 16 April 1993 because of his work-related injury. Furthermore, on cross-examination, Stacy Penny admitted that he would not have fired an employee for taking a day off to tend to personal matters, if that employee's attendance was satisfactory. In light of these facts, we hold that the

**FLORES v. STACY PENNY MASONRY CO.**

[134 N.C. App. 452 (1999)]

Commission's findings were supported by competent evidence. Moreover, pursuant to our decision in *Seagraves*, 123 N.C. App. 228, 472 S.E.2d 397, the Commission's findings supported its conclusion that plaintiff was not barred from receiving disability benefits after 16 April 1993. This argument also fails.

[3] In addition to addressing defendants' arguments, plaintiff requests that we order defendants to pay plaintiff's expenses incurred in connection with the present appeal. Under section 97-88, the Commission or a reviewing court may award costs, including attorney's fees, to an injured employee " 'if (1) the insurer has appealed a decision to the full Commission or to any court, and (2) on appeal, the Commission or court has ordered the insurer to make, or continue making, payments of benefits to the employee.' " *Brown v. Public Works Comm.*, 122 N.C. App. 473, 477, 470 S.E.2d 352, 354 (1996) (quoting *Estes v. N.C. State University*, 117 N.C. App. 126, 128, 449 S.E.2d 762, 764 (1994)). In the instant case, defendants appealed the deputy commissioner's decision to the Full Commission, which affirmed the award of disability compensation, and now appeals the Full Commission's decision to this Court, and we too affirm the directive that defendants continue paying temporary total disability benefits to plaintiff. The requirements of section 97-88 are satisfied, and in our discretion, *see Brown*, 122 N.C. App. at 477, 470 S.E.2d at 354, we grant plaintiff's request. Accordingly, this matter is remanded to the Commission for determination of the amount due plaintiff for the expenses he incurred as a result of the appeal to this Court, including reasonable attorney's fees.

For the foregoing reasons, the opinion and award of the Commission is affirmed and this matter remanded for a determination of the appropriate amount of costs to be taxed to defendants.

Affirmed and remanded.

Judges LEWIS and HORTON concur.