FELIX OLIVARES-JUAREZ, Employee Plaintiff v. SHOWELL FARMS, Employer, LIBERTY MUTUAL INS. CO., Carrier Defendants

No. COA99-657

(Filed 5 July 2000)

**Workers' Compensation— loss of earning capacity—insufficiency of evidence**

An Industrial Commission decision in a worker's compensation action was reversed and remanded as premature where the Commission stated that plaintiff was incapable of earning his pre-injury wage at the same or other employment but the opinion and award lacked findings to support that conclusion. The Commission refused to approve the proposed Form 21 Agreement between the parties, so that there was no presumption of disability, and plaintiff made no showing that his earning capacity was diminished as a result of his on-the-job injury.

Appeal by defendants from opinion and award entered 23 February 1999 by the North Carolina Industrial Commission. Heard in the Court of Appeals 14 March 2000.

*Robert J. Willis for plaintiff-appellee.*

*Haynsworth Baldwin Johnson & Greaves, LLC, by Brian M. Freedman and J. Nathan Duggins, III, for defendants-appellants.*

TIMMONS-GOODSON, Judge.

Showell Farms ("defendant-employer") and Liberty Mutual Insurance Company ("defendant-carrier") (collectively, "defendants") appeal from an opinion and award wherein the North Carolina

Industrial Commission ("the Commission" or "the Full Commission") awarded Felix Olivares-Juarez ("plaintiff") temporary total disability benefits. For the reasons stated herein, we reverse the Commission's decision and remand this matter for a new hearing.

Plaintiff is Guatemalan and, at all times relevant to these proceedings, did not have the necessary documentation to qualify as a legal immigrant or to hold employment in the United States. His brother, Felipe, possessed the requisite documentation, and on 4 June 1995, plaintiff obtained employment with defendant-employer using his brother's documentation. Defendant-employer was not aware of the misrepresentation.

On 1 August 1995, plaintiff fractured the ulna and radius of his left arm while operating a pressure hose in the course of his employment with defendant-employer. Defendant-carrier initiated disability payments on 14 August 1995 pursuant to section 97-18(d) of the North Carolina General Statutes and filed a Form 63 Notice to "Felipe Olivares Juarez" (plaintiff's brother) of Payment of Compensation Without Prejudice. Plaintiff filed a Form 18 Notice of Accident using his brother's name, and the parties attempted to execute a Form 21 Agreement with plaintiff signing his brother's name. The Commission, however, refused to approve the Form 21 Agreement because "the name listed for the employee was admittedly fictitious."

Plaintiff underwent surgery to repair his left arm fractures on 4 August 1995. Over the course of the next several months, plaintiff engaged in physical therapy, and on 7 December 1995, Dr. Bynum approved plaintiff's return to a modified, "one-handed," clean-up position offered by defendant-employer. Before plaintiff could accept the position, however, defendant-employer withdrew its offer to re-employ plaintiff because of his illegal immigration status. Then, on 2 January 1996, defendant-carrier terminated plaintiff's disability payments.

Dr. Bynum conducted a final examination of plaintiff's condition on 8 February 1996 and assigned him a 5% permanent partial disability rating to his left arm. In addition, Dr. Bynum restricted plaintiff from lifting more than 25 pounds, working with vibrating instruments, or working in cold temperatures for a period of three months. He otherwise permitted plaintiff to return to normal activities.

Plaintiff obtained employment with Quality Molded Products inspecting finished parts on 29 January 1996. The position required plaintiff to use both arms to operate machinery and to lift boxes

containing parts. Plaintiff ultimately resigned from this position on 19 May 1996 due to complaints of pain and discomfort in his left thumb and forearm. On 3 August 1996, plaintiff began employment with Glendale Hosiery Company earning a lesser wage than he received with defendant-employer.

On 2 April 1996, Dr. Andrew P. Bush, an orthopaedic surgeon, examined plaintiff and found some weakness in his thumb, which combined with pain would cause some diminished grip strength. Dr. Bush also found mild weakness in plaintiff's left upper extremity, but anticipated that after four weeks of physical therapy, this condition would return to normal.

Plaintiff presented to Dr. Gary R. Kuzma, an orthopaedic surgeon and hand specialist, for an independent medical evaluation on 8 May 1996. After reviewing plaintiff's medical records and conducting a physical examination of plaintiff, Dr. Kuzma formed the opinion that plaintiff was not suffering from significant dystrophic changes in his left hand and that any dystrophy present was probably fixed and might disappear in time. He further opined that plaintiff was at maximum medical improvement on 8 May 1996 and that he sustained a 10% permanent partial disability to his left hand, which would translate into a 10% permanent partial disability rating for the left arm.

Plaintiff's case came on for hearing before Deputy Commissioner Richard B. Ford on 24 February 1997. On 3 December 1996, Commissioner Ford filed an opinion and award concluding that plaintiff's unemployment subsequent to 7 December 1995 was caused by his illegal immigration status and lack of documentation permitting his employment in the United States. For this reason, the deputy commissioner discontinued plaintiff's temporary total disability compensation and limited plaintiff's permanent partial disability compensation to twenty weeks, commencing 29 January 1996. Plaintiff appealed this decision to the Full Commission.

On appeal, the Full Commission reversed Commissioner Ford's denial of benefits after 7 December 1995. In so doing, the Commission determined that irrespective of plaintiff's illegal immigration status, the light duty position offered to him by defendant-employer did not demonstrate that plaintiff was capable of returning to suitable employment at pre-injury wages. On this basis, the Commission awarded plaintiff temporary partial disability compensation not to exceed 300 weeks from 1 August 1995. Defendants appeal.

Defendants' primary argument is that the Commission erred in placing the initial burden on them to prove the availability of suitable employment at pre-injury wages without first requiring plaintiff to establish the existence and extent of his disability. We agree that the Commission so erred.

Our review of an opinion and award entered by the Full Commission is limited to determining (1) whether the record contains competent evidence to support the Commission's factual findings and (2) whether the Commission's findings likewise support its legal conclusions. *Flores v. Stacy Penny Masonry Co.*, 134 N.C. App. 452, 518 S.E.2d 200 (1999). If the record contains any competent evidence sustaining the Commission's findings of fact, such findings are final, notwithstanding whether other evidence exists that would support contrary findings. *Id.* The Commission's legal conclusions are, nonetheless, fully reviewable. *Grantham v. R.G. Barry Corp.*, 127 N.C. App. 529, 491 S.E.2d 678 (1997), *disc. review denied*, 347 N.C. 671, 500 S.E.2d 86 (1998).

"Disability" under the Workers' Compensation Act refers to "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (1999). An injured employee has the initial burden of proving the extent and degree of his disability. *Snead v. Pre-Cast Concrete, Inc.*, 129 N.C. App. 331, 499 S.E.2d 470, *cert. denied*, 348 N.C. 501, 510 S.E.2d 656 (1998). To do so, he must demonstrate that he is unable to earn pre-injury wages in the same employment or in any other employment and that the inability to earn such wages is due to his work-related injury. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). The employee may make this showing in one of the following ways:

(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. (Citations omitted.)

*Russell v. Lowes Production Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Only after the employee has met his initial burden of proof does the burden then shift to the employer to rebut the evidence of disability. *Coppley v. PPG Indus., Inc.*, 133 N.C. App. 631, 635, 516 S.E.2d 184, 187 (1999).

Furthermore, to permit meaningful appellate review of the Commission's decision, the findings of fact must adequately reflect that plaintiff produced sufficient evidence to meet his burden of proving disability. *Id.* at 635, 516 S.E.2d at 187.

> "The Industrial Commission must make specific findings of fact as to each material fact upon which the rights of the parties in a case involving a claim for compensation depend. If the findings of fact of the Commission are insufficient to enable the court to determine the rights of the parties upon the matters in controversy, the cause must be remanded to the Commission for proper findings of fact."

*Id.* (quoting *Hansel v. Sherman Textiles*, 304 N.C. 44, 59, 283 S.E.2d 101, 109-10 (1981) (citations omitted)).

In Conclusion of Law #3, the Commission stated that "[a]s a result of his compensable injury, . . . plaintiff was incapable of earning his pre-injury wage at the same or other employment." The opinion and award, however, lacks findings to support this conclusion. The record indicates that the Commission refused to approve the proposed Form 21 Agreement between the parties; therefore, as defendants correctly contend, a presumption of disability in favor of plaintiff did not arise. *Cf. Flores*, 134 N.C. App. at 456, 518 S.E.2d at 203 (stating that if "a Form 21 Agreement has been executed by the parties and approved by the Commission, the employee is entitled to a presumption that he is, indeed, disabled.") Consequently, before defendants could be required to prove the availability of suitable employment, plaintiff had to first come forward with evidence to show that his earning capacity was diminished as a result of his on-the-job injury. The findings of fact do not reveal that plaintiff made any such showing. Therefore, the Commission's conclusions regarding the availability and suitability of the modified-duty position offered by defendant-employer was premature. Accordingly, the Commission's decision must be set aside. Moreover, given our holding in this regard, we need not address defendants' remaining arguments.

For the foregoing reasons, we reverse the opinion and award and remand this case to the Commission for further proceedings consistent with this opinion.

Reversed and remanded.

Judges GREENE and WALKER concur.