As stated in plaintiff's brief:
The question at issue in this case is whether the plaintiff is disabled and therefore entitled to continuing disability benefits. Disability is defined by the Workers' Compensation Act as impairment of one's earning capacity rather than physical disablement; an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment." N.C.G.S. § 97-2(9) (2000);Brown v. SN Communications, Inc., 124 N.C. App. 320, 477 S.E.2d 1970996).
Initially, the claimant must prove both the extent and degree of disability. Id; Snead v. Pre-Cast Concrete, Inc., 129 N.C. App. 331,499 S.E.2d 470, cert. denied, 348 S.E.2d 501, 510 S.E.2d 656 (1998);Olivares-Juarez v. ShowellFarn', s, 138 N.C. App. 633, 532 S.E.2d 198
(2000). The plaintiff-employee may make this showing in one of the following ways:
 the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to week other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Snead, 129 N.C. App. 331, 499 S.E.2d 470; Olivares-Juarez, 532 S.E.2d 198. (citations omitted).
One method for establishing disability is the use of the Industrial Commission Form 21; written agreements between employers and employees using Form 21 and approved by the Commission qualify as awards of the Commission and entitle employees to a presumption of disability. Sims'v. Charmes/Arby `s Roast Beef 142 N.C. App. 154, 152 S.E.2d 277, (2001)citing, Kisiah v. WR. Kisiah Plumbing Inc., 124 N.C. App. 72,476 S.E.2d 434 (1996). However, admitting compensability and liability, whether through notification of the Commission by the use of a Form 60 or through paying benefits beyond the statutory period provided for in G.S.§ 97-18(d), does not create a presumption of continuing disability as does a Form 21 agreement entered into between the employer and the employee. Sims v. Charmes/Arby's, 542 S.E.2d 277 (2001).
The Sims case was filed by the Court of Appeals on February 6, 2001, and was the first case to address the issue of whether the presumption of disability automatically attaches when there is a Form 60 agreement for compensation between the parties as it does with a Form 21. Sims,542 S.E.2d at 277. In her conclusions of law 1, Deputy Commissioner Pfeiffer correctly cited the Sims case in that a Form 60 does not give rise to a continuing presumption of disability as does a Form 21. See, Deputy Commissioner's Opinion and Award, Conclusion of Law 1, page 7. However, the Deputy Commissioner and the majority of the Full Commission panel on review failed to apply the other four methods of proving disability which give rise to a presumption of continuing disability as noted supra.
Since plaintiff had proven by the production of medical evidence that he was physically, as a consequence of the work-related injury, incapable of work in any employment, plaintiff was and is entitled to a continuing presumption of disability. The plaintiff proved that there was an injury by accident during the course and in the scope of his employment, and that as a result of that injury, plaintiff was required to have surgery on his leg and was taken out of work by Dr. Harshman, and later kept out of work by Dr. Delaney. During that time, plaintiff was unable to earn any wages. There was no evidence presented to the contrary.
Not only did Deputy Commissioner Pfeiffer and the majority fail to apply the presumption of disability to plaintiffs case, they also failed to make a finding that plaintiff was either disabled or not disabled. The evidence established that plaintiff was disabled. Defendants did not contest that, nor did they present any evidence to the contrary. Thus, the Deputy Commissioner and the majority erred in failing to make a finding on a material fact.
Once the plaintiff proves disability, by a Form 21 or otherwise, there is a presumption that disability continues until the employee returns to work at wages equal to those he was receiving at the time of his injury.Brown v. SN Communications, 124 N.C. App. 320; Radica v. CarolinaMills, 113 N.C. App. 440, 447, 439 S.E.2d 185, 190 (1994). (citations omitted).
After the presumption attaches, the burden shifts to the employer to show that plaintiff is employable. Saums v. Raleigh Community Hospital,346 N.C. 760, 487 S.E.2d 746, 749 (1997). In Dalton v. Anvil Knitwear,119 N.C. App. 275, 458 S.E.2d 251, disc. rev. denied and cert. denied,341 N.C. 647, 462 S.E.2d 507 (1995), the Court of Appeals found that the plaintiff had met her burden of proving disability. After plaintiff met her initial burden, the burden shifted to defendant to show that plaintiff was employable. The Commission's findings of fact and conclusions of law did not indicate that plaintiff was capable of earning the same wages that she had earned prior to the injury. The defendant had failed to overcome the presumption of disability.
The employee need not present evidence at the hearing unless and until the employer, claiming that the plaintiff is capable of earning wages, comes forward with evidence to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations. Saums,487 S.E.2d at 749; Kisiah, 476 S.E.2d at 439 (citations omitted); See also,Stamey v. North Carolina Self-Insurance Guar. Ass'n, 131 N.C. App. 662,507 S.E.2d 596, FN4 (1998). The employer may rebut the presumption of continuing disability through medical and other evidence, including evidence that suitable jobs are available and plaintiff is capable of getting one. Stamey, 507 S.E.2d at 599. In addition, if the proffered employment does not accurately reflect the person's ability to compete with others for wages, it cannot be considered evidence of earning capacity. Peoples v. Cone Mills, 316 N.C. 426, 342 S.E.2d 798, 806
(1986).
In his deposition, Mi. Barrera testified that he did not offer plaintiff a specific job; he merely informed plaintiff that since he had been released, that he was expected to return to work. (D. p. 13) Mr. Barrera admitted that plaintiff was willing to return to work. (D. p. 10) In his discussion with Dr. Delaney, Mr. Banera learned that plaintiff was "pretty well released" and that he had "90% use of his legs". (D. p. 14) Mr. Barrera did not ask Dr. Delaney what plaintiff's restrictions were, nor did he discuss plaintiff's potential job duties. (D. p.p. 14, 16) There was never any job description given to Dr. Delaney for approval. (D. p. 16). Mr. Barrera also testified that plaintiff's regular job with defendant/employer was a "light duty" job and that plaintiff could "sit down as needed". However, there is no evidence that another employer would hire plaintiff and allow him to do those duties and "sit down as needed"; there is no evidence that plaintiff's previous job was "light duty" or that it was available in the competitive job market.
Defendants offered no evidence whatsoever that a suitable job was offered to plaintiff, that plaintiff was capable of performing said job, that plaintiff was released without restrictions in December 1998, or that any suitable job offered to plaintiff was available in the competitive job market and not a "make work" position.
An employee's release to return to work is not the equivalent of a finding that the employee is able to earn the same wage earned prior to the injury, nor does it automatically deprive an employee of the benefit of the presumption of continuing disability. Radica v. Carolina Mills,113 N.C. App. at 447, 439 S.E.2d at 190 (emphasis added); Kisiah v.Kisiah Plumbing, 124 N.C. App. at 81, 476 S.E.2d at 439. Mere proof of a return to work is insufficient to rebut the presumption because capacityto earn is the benchmark test of disability. Stamey, 507 S.E.2d at 599, citing Kisiah, 476 S.E.2d at 439.
Additionally, the Court of Appeals has stated that even if an employee returns to work at a pre-injury wage level, this evidence alone may be an unreliable basis for estimating earning capacity. Kisiah,476 S.E.2d at 439. N.C.G.S. § 97-32.1 (2000) provides that an employee may attempt a trial return to work for a period not to exceed nine months without losing his right to continuing compensation. Stamey,507 S.E.2d at 600. In Stamey, the Court of Appeals found that the plaintiff's temporary, and ultimately unsuccessful, trial return to work was insufficient to rebut the presumption of disability in her favor. Id.
Furthermore, a finding of maximum medical improvement is not the equivalent of a finding that the employee is able to earn the same wage earned prior to the injury, and does not satisfy' the defendant's burden. Brown v. SN, 477 S.E.2d at 203. The maximum medical improvement finding is solely the prerequisite to the determination of the amount of any permanent disability for purposes of N.C.G.S. § 97-31. Id.
In Home v. Universal Leaf Tobacco Processors, 119 N.C. App. 275,458 S.E.2d 251, rev, denied, 342 N.C. 192, 463 S.E.2d 237 (1995), the Court of Appeals discussed the term "maximum medical improvement":
 The term "maximum medical improvement" is not defined in the statutes and has been the source of some confusion. G.S. 97-3 1 provides compensation for temporary disability during the "healing period." The healing period ends when "after a course of treatment and observation, the injury is discovered to be permanent and that fact is duly established." Crawley v. Southern Devices, Inc., 31 N.C. App. 284, 289, 229 S.E.2d 325, 329 (1976). The point at which the injury has stabilized is often called "maximum medical improvement." Carpenter v. Industrial Piping Co., 73 N.C. App. 309, 311, 326 S.E.2d 328, 330 (1985). In Carpenter, this court discussed the term "maximum medical improvement" and its relation to the termination of the "healing period" required by G.S.97-31. [Maximum medical improvement] connotes that the claimant is only temporarily totally disabled and his body healing when his condition is steadily improving, and/or he is receiving medical treatment. Yet, recovery from injuries often entails a healing period of alternating improvement and deterioration. In these cases, the healing period is over when the impaired bodily condition is stabilized, or determined to be permanent, and not at one of the temporary high points. Moreover, in many cases the body is able to heal itse1f and during convalescence doctors refrain from active treatment with surgery or drugs. Thus, the absence of such medical treatment does not mean that the injury has completely improved or that the impaired bodily condition has stabilized. Id. At 3ll, 326 S.E.2d at 330.
In Brown v. SN Communications, the Court of Appeals found that the Commission had erred by mistaking a finding of maximum medical improvement for evidence sufficient to rebut the presumption of continuing disability. Brown, 477 S.E.2d at 203. The Court stated that the Commission erroneously placed the burden of proving the disability on the plaintiff following a finding that the plaintiff had reached maximum medical improvement. Id. In its findings of fact, the Commission found the evidence insufficient to prove that plaintiff was still disabled.Id. The Commission made no findings as to the sufficiency of the defendant's evidence. Id. The Court found this formula for reviewing the plaintiff's claim to be incorrect, and that after a finding of maximum medical improvement, the burden remains with the employer to produce sufficient evidence to rebut the continuing presumption of disability; the burden does not shift to the employee.
The Deputy Commissioner conducted the hearing under the premise that a Form 60 agreement creates a presumption of on going disability and that presumption continues until rebutted by the defendants. (T. p. 8). Afterward, the Sims case came out a few weeks before the Deputy Commissioner's decision, and she noted in her Conclusion of Law 1 that there was no presumption. However, both the Deputy Commissioner and the majority failed to make a finding as to whether plaintiff had proven disability. There is no finding either that plaintiff has proven or has not proven disability, and as that is a material fact, the Deputy Commissioner and the majority is in error.
Moreover, the Deputy Commissioner and the majority erred in not correctly applying the presumption of continuing disability after the plaintiff had proven disability through the evidence. In failing to do so, the Deputy Commissioner incorrectly shifted the burden back to the plaintiff. Indeed, the Deputy Commissioner's evaluation of both the medical and the lay testimony was thereby tainted from her having incorrectly shifted the burden of proof.
In this case, the plaintiff proved that he was disabled and the defendants failed to rebut the presumption of continuing disability for the reasons stated in the disapproval of the Form 24. Specifically, the plaintiff was released to return to work on November 13, 1998, with the restrictions of no lifting greater than 25 pounds and no excessive ambulation. A few weeks later, on December 3, 1998, plaintiff was found to have reached maximum medical improvement and was assigned a two percent (2%) permanent partial impairment rating to his right leg. There was no evidence that plaintiff was released to return to full duty work without any restrictions, nor was there any evidence that plaintiff had been offered a suitable job within his restrictions. (R. p. 64).
Plaintiff's doctor had not been given any specific job description for approval, upon which a determination of suitability to plaintiff's capacities could be made. Absent of any job description being approved by Dr. Delaney, and a refusal to attempt said job, plaintiff is entitled to ongoing temporary total disability.
The Deputy Commissioner's and the majority's Conclusions of Law are not supported by the evidence or by their findings. In their findings of fact, the Deputy Commissioner and the majority found that it was not until his deposition on June 6, 2000 that Dr. Delaney offered the opinion that plaintiff could work unrestricted in his previous job as a carpenter. Deputy Commissioner's Opinion and Award, Findings of Fact 5
and 6, p. 4. After making these findings, the Deputy Commissioner concludes that the plaintiff was released to return to work without restriction, was offered suitable employment, and unjustifiably refused said employment. Yet, her findings indicate that plaintiff was not informed that he was released to unrestricted work until Dr. Delaney's deposition or that Dr. Delaney had not approved plaintiffs returning to his prior job duties until his deposition of June 6, 2000. Yet, the Deputy Commissioner concluded that plaintiff unjustifiably refused a job while he had been unaware that he had been released to return to said job.
The Deputy Commissioner and the majority found that in December 1998, there was no job description approved by the doctor and no release to unrestricted duty, yet she concluded that plaintiff unjustifiably refused this nonexistent job offer and awarded defendants the right to terminate plaintiff's temporary total disability benefits as of the date that plaintiff had no knowledge of his release to unrestricted work. Plaintiff had no knowledge of it, because there was not a release to unrestricted work and a job approval did not exist until the June 6, 2000 deposition of Dr. Delaney. It is not possible for plaintiff to unjustifiably refuse a job offer that had not been approved by his doctor, who at that time had only released him to restricted duty. How could plaintiff unjustifiably refuse a job offer made to him in December 1998, when he was not notified until June 2000 that his doctor would approve of the job and a release to unrestricted duty? It is important to note that Dr. Delaney expressed this opinion despite the fact that he had not examined the plaintiff since December 3, 1998.
By the time of the hearing before the Deputy Commissioner, plaintiff had obtained a second opinion from Dr. Noel Rogers, a practicing orthopedist for thirty years. Dr, Rogers was of the opinion that plaintiff had had some possible nerve damage, and he released plaintiff to restricted sedentary work and gave him a nineteen percent (19%) permanent partial disability rating of the whole person. Dr. Rogers opined that plaintiff had a severed femoral nerve in contrast to Dr. Delaney who believed that plaintiff did not have a severed nerve. In the Opinion and Award of February 19, 2001 written by Deputy Commissioner Pfeiffer, it clearly shows a conflict of evidence with regards to the opinions of Dr. Rogers and Dr. Delaney regarding plaintiff's ability to work and the extent of his leg injury.
After the closing of the record on July 19, 2000, plaintiff was examined by Dr. Clarence Ballenger of Coastal Neurological Associates, P.A. on October 5, 2000. Dr. Ballenger is a board certified neurologist. In his exam of plaintiff, Dr. Ballenger suspected that plaintiff's peroneal and tibial nerves were injured in the compensable injury of July 21, 1998. He requested that EMGINCV tests be performed to clarify plaintiff's medical condition. Plaintiff returned to Dr. Ballenger following the testing. Dr. Ballenger recommended that an MIRI of the back be obtained to further illuminate the causation of the plaintiff's problems. The MR.I has not been performed due to lack of insurance. Dr. Ballenger can provide pertinent testimony with regards to plaintiff's current medical condition and ability to return to work.
The Court of Appeals has held that, upon appeal to the Commission from an opinion and award of the hearing commissioner, the Commission has the discretionary authority to receive further evidence regardless of whether it was newly discovered evidence. Keel v. HVInc., 107 N.C. App. 536,542, 421 S.E.2d 362, 367 (1992); Lynch v. M.B. Kahn Const. Co.,41 N.C. App. 127, 130, 254 S.E.2d 236, 238 (1979);Harris v. FrankL. Baum Const. Co., 10 N.C. App. 413, 420,179 S.E.2d 148, 153 (1971).
In Hall v. Thomason Chevrolet, Inc., 263 N.C. 569, 139 S.E.2d 857
(1965), the Supreme Court of North Carolina in citing other authorities stated that the fact that evidence claimed as a basis of a motion to open a compensation award is not newly discovered and might have been offered at the original hearing in the exercise of due diligence, and that counsel, through inadvertence, has failed to present a ground upon which compensation might be allowed, do not in themselves prevent the compensation commissioner from granting such a motion. Id.139 S.E.2d at 862. The Court agreed with this reasoning and went on to state that the strict rule in civil actions, for obvious reasons, could not be applicable to proceedings under the Workers' Compensation Act.Id.
The Full Commission has the discretionary authority to hear additional testimony upon the motion of a party demonstrating good grounds for doing so, or upon its own motion. Keel, 107 N.C. App. 536, 421 S.E.2d 362
(1992); Harris v. Baum, 10 N.C. App. 413, 179 S.E.2d 148 (1971). The Full Commission may and should allow additional evidence if the dueadministration of justice requires it. Keel, 107 N.C. App. at 542,421 S.E.2d at 367 (emphasis added).
Although the decision to take additional evidence is one within its sound discretion, the Full Commission has the duty and responsibility to decide all matters in controversy between the parties; if necessary, the Full Commission must resolve matter in controversy even if those matters were not addressed by the deputy commissioner. Crump v. IndependenceNissan, 112 N.C. App. 587, 436 S.E.2d 589, 592 (1993). Therefore, when the transcript and record before the Full Commission is insufficient to resolve all the issues, the Full Commission must conduct its own hearing or remand the matter for further hearing. Id.
In the present case, there is a conflict in regards to the medical testimony. Since the evidence needed to clarify and resolve this issue is readily at hand, then the Full Commission is following its duty and responsibility to resolve all matters of controversy by reopening the evidence, allowing the deposition of Dr. Ballenger, and conducting its own hearing.
It is a fundamental rule that the Workers' Compensation Act should be liberally construed to achieve its purpose of providing compensation to employees injured by accident arising out of and in the course of their employment and that its benefits should not be denied upon technical, narrow, and strict interpretation. Hall v. Thomason Chevrolet, Inc.,263 N.C. 569, 139 S.E.2d 857, 862 (1965); Lynch,41 N.C. App. at 130, 254 S.E.2d at 238. Good grounds exist for reopening the present case where the evidence needed can be easily obtained. To decide otherwise would run contrary to the purpose of the Workers' Compensation Act.
In Lynch, the defendant contended that the "good ground" which N.C.G.S. § 97-85 requires to be shown before the Commission may "receive further evidence" means something more than the failure of a claimant to make out his case after he has had a fair opportunity to do so; the defendant argued that the plaintiff, who had the burden of proof, simply failed to present sufficient evidence to establish a compensable claim. Id., 41 N.C. App. at 130, 254 S.E.2d at 238. For these reasons, the defendant contended that the Commission exceeded its powers in remanding the case for further testimony and that it should have simply reversed the deputy commissioner's award as being unsupported by competent evidence. Id. The Court of Appeals did not agree and determined that no manifest abuse of the Commission's discretion had been shown in determining that good ground existed to hear additional testimony where the evidence was not newly discovered and the plaintiff had had three previous hearings in which to submit the evidence. Id.
In the present case, there is a definite conflict in the medical testimony, and the testimony of Dr. Ballenger is newly discovered evidence as it was not available at the time of the hearing. Dr. Delaney's testimony in June 2000 is insufficient to show plaintiff's current medical condition. Dr. Rogers suspects from plaintiff's symptoms that he has injured a nerve bundle. The testimony of board certified neurologist, Dr. Ballenger can clarify the state of plaintiffs continuing disability. Dr. Ballenger can provide pertinent testimony with regards to plaintiff's current medical condition and ability to return to work. Since it is axiomatic that Workers' Compensation benefits are not to be denied on technical, narrow, or strict interpretation, then the due administration of justice requires that the Commission receive additional evidence.
The Deputy Commissioner and the majority failed to make a finding, based on the evidence that plaintiff was disabled. Since the evidence proved that plaintiff was disabled, the plaintiff is entitled to the presumption of continuing disability. The Deputy Commissioner and the majority failed to apply the presumption of disability to plaintiff's case thereby shifting the burden of proof incorrectly onto the plaintiff to prove continuing disability. In so doing, the Deputy Commissioner and the majority did not view the evidence as defendants' burden to rebut the presumption. The Deputy Commissioner's and the majority's findings of fact are not supported by the evidence and their conclusions of law are not supported by the findings. Furthermore, there is a conflict in the medical testimony, which maybe resolved by reopening the case and allowing the testimony of Dr. Ballenger.
Defendants have not proven their case. Plaintiff has not unjustifiably refused an offer of suitable employment. Plaintiff is entitled to a continuing presumption of disability. Plaintiff is entitled to continued temporary total disability benefits and continuing medical treatment with Dr. Ballenger.
This 17th day of January 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER