***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the entire record of evidence, the Full Commission reverses the holding of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner on 19 July 2002 as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Corporate Claims Management acting as its servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable occupational disease, bilateral carpal tunnel syndrome, on 2 October 1998, as a result of which the parties entered into the Form 21 Agreement. Plaintiff received temporary total disability benefits pursuant to the Form 21 from 21 January 1999 through 3 May 1999.
5. Plaintiff's average weekly wage was $300.40, which yields a compensation rate of $200.57 per week.
6. Plaintiff retains a twelve and one-half percent (12.5%) permanent partial impairment to each hand as a result of the compensable occupational disease.
7. The issue for determination is whether plaintiff has sustained a change of condition, and if so, to what additional benefits may she be entitled under the Act?
8. The parties stipulated medical records and payments into evidence at the hearing.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a sixty-five year old female, with a third grade education. She is able to read very little and can write her name.
2. For thirty-three years, plaintiff worked for the defendant making clocks. Her duties included grasping and manipulating pliers and screwdrivers to assemble clocks. Her duties on the assembly line in plastic molding were repetitive in nature.
3. Plaintiff began experiencing the symptoms of bilateral carpal tunnel syndrome and removed herself from work on recommendation of her doctor. On 21 January 1999 Dr. Oakley performed carpal tunnel release surgery on the plaintiff's left wrist. On 18 March 1999 Dr. Oakley performed carpal tunnel release surgery on the plaintiff's left wrist.
4. Dr. Oakley subsequently released the plaintiff to return to light duty work beginning 1 May 1999 and regular work 1 June 1999.
5. In May 1999 the plaintiff was assigned three different jobs in the subassembly department, taking recycled clocks apart to use their parts in other clocks. All three subassembly jobs required continuous use of a workers' hands manipulating small clock parts.
6. The first subassembly job attempted by plaintiff involved separating parts. This was not a normal job any employee did on a full-time basis. Plaintiff herself was sent home when there was not separating work to be done. The separating positions were not regular work positions available in the job market but rather were part-time jobs given to "light-duty" employees from other departments. While the plaintiff was there, there were seven to eight employees in subassembly, and all were under work restrictions of some type.
7. Because she could not work a full-time schedule separating parts, the plaintiff also worked punching holes out of the clock dials in May of 1999. This is another job that was not filled on a full-time basis by defendant-employer.
8. The third task the plaintiff did during May 1999 was putting labels on clocks. This is the only of the three tasks that was actually a full-time, regular job. Plaintiff did not perform this job on a full-time basis, however.
9. In June, 1999, plaintiff's light-duty restriction expired and the plaintiff returned to her preinjury job in the plastic molding department. Plaintiff was given the task of "running the crystals," which required the plaintiff to grip pliers and insert crystals and other components thousands of times per day. Plaintiff worked in this position for one hour before her carpal tunnel syndrome symptoms returned.
10. Plaintiff immediately saw Dr. Oakley. On 8 June 1999, Dr. Oakley issued the opinion that the plaintiff could not return to her preinjury employment and imposed permanent restrictions for plaintiff to avoid strenuous or repetitive hand use, including gripping.
11. When plaintiff returned with her increased restrictions, she was put back into the "light duty" subassembly area, where she worked until until 4 July 1999 separating parts, punching dials, and applying labels. During this period, plaintiff had to search for things to do. This modified position plaintiff occupied was not a regular full-time position available in the competitive job market.
12. Defendant-employer was shut down from 4 July 1999 until 12 July 2002 for vacation and inventory. As of 12 July 1999, the plaintiff stopped work after 33 years working for defendant-employer. The plaintiff retired because what they had her doing "was not a job." The plaintiff wanted to keep working, but her physical limitations and pain prevented it.
13. Plaintiff has not worked or earned any wages since her employment with defendant-employer ended. Plaintiff has not sought other work due to her physical restrictions and vocational limitations.
14. The "patchwork" jobs performed by plaintiff in May 1999 when she returned to work were not "suitable employment" in that they were not indicative of her ability to compete with others on the open market and were not available in the standard course of defendant-employer's business or elsewhere.
15. In June 1999 when the plaintiff attempted her preinjury, unmodified job she was unable to perform the tasks after just one hour due to disability causally related to her admittedly compensable conditions.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's carpal tunnel syndrome was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer, is not an ordinary disease of life to which the general public not so employed is equally exposed, and is, therefore, an occupational disease. N.C. Gen. Stat. § 97-53(13).
2. The light-duty jobs attempted by plaintiff in May and June 1999 were not "suitable" jobs pursuant to North Carolina Workers' Compensation law. Saums v. RaleighCommunity Hospital, 346 N.C. 760, 487 S.E.2d 746 (1997);Peoples v. Cone Mills, 316 N.C. 426, 342 S.E.2d 798
(1986).
3. Defendants did not meet their burden of producing evidence that suitable jobs are available to plaintiff and that the plaintiff is capable of attaining one given the plaintiff's age, education, physical limitations, vocational skills, and experience. Flores v. Stacy PennyMasonry Co., 134 N.C. App. 452, 518 S.E.2d 200 (1999).
4. As a result of her contraction of a compensable occupational disease, the plaintiff is entitled to temporary total disability compensation at the rate of $200.57 per week beginning 21 January 1999 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have the defendant pay for medical expenses incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to the attorney's fee approved herein, for her compensable contraction of an occupational disease, defendants shall pay temporary total disability compensation at the rate of $200.57 per week beginning 21 January 1999 and continuing until further order of the Commission. To the extent that this amount has accrued, it shall be paid in a lump sum. Defendants are entitled to a credit for the wages paid to plaintiff subsequent to 1 May 1999.
2. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of the compensable occupational disease.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this AWARD is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, plaintiff's counsel shall receive every fourth check.
4. Defendant shall the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER